IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

EMOVE INCORPORATED,

Plaintiff,

v.

SMD SOFTWARE INCORPORATED, et al.,

Defendants.

NO. CV-10-02052-PHX-JRG

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Amended Joint Stipulation to File Excerpts of Confidential Material Under Seal Re: EMove, Inc's Response to Motion for Summary Judgment and EMove Inc's Response to Statement of Facts and Supplemental Statement of Facts [Docket 116]. For the reasons discussed below, this motion is **DENIED**.

The court denied the parties original Joint Stipulation [Docket 99]. Although the Amended Joint Stipulation provides more legal analysis tailored to the documents sought to be sealed, it is mostly insufficient. The parties move to file under seal the following documents: (1) portions of eMove's Response to Defendants' Motion for Summary Judgment ("Response"); (2) portions of eMove's Response to Defendants' Statement of Facts and eMove's Supplemental Statement of Facts ("Response Statement of Facts"); and (3) several exhibits including the (a) deposition transcript of Markus Hecker, (b) deposition transcript of Ross Lampe, (c) deposition transcript of Sam Celaya, (d) defendants' call logs and email communications, (e) declaration of Sam Celaya, and (f) Expert Report of MCA Financial Group, Ltd.

I.  **Legal Standard**

The Ninth Circuit recognizes a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Although this right is not absolute, I begin with a strong presumption in favor of access. *Id.* To overcome this presumption, the party must provide compelling reasons accompanied by specific factual findings. *Id.* Of course, in the instant suit, the *Daubert* motion and accompanying pleadings and papers have been filed under seal. The court recognizes that it may protect "business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. However, the Ninth Circuit has reasoned that records attached to dispositive motions should be treated differently than those attached to nondispositive motions. *Kamakana*, 447 F.3d at 1180. Because the public has less need for access to records attached to nondispositive notions, a good cause standard applies. *Id.* In contrast, because "resolution of a dispute on the merits . . . is at the heart of the interest in ensuring the public's understanding of the judicial process," the parties must show compelling reasons to seal pleadings and records associated with dispositive motions. *Id.* at 1179.

Compelling reasons exist when court records could "become a vehicle for improper purpose, such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The parties state that the documents they ask the court to seal contain trade secrets. However, asserting that something is a trade secret does not transform it into a trade secret.

Rather, a trade secret "consist[s] of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *MMI, Inc. v. Baja, Inc.*, 743 F.Supp.2d 1101, 1105-06 (D. Ariz. 2010). Moreover:

> [C]onfidentiality alone does not transform business information into a trade secret. A trade secret differs from other secret information in a business in that it is not simply information as to single or ephemeral events in the conduct of the business, as, for example, the amount or other terms of a secret bid for a contract or the salary of certain employees, or the security investments made or contemplated, or the date fixed for the announcement of a new policy or for bringing out a new model or the like. A trade secret is a process or device for continuous use in the operation of the business.

*St. Clair v. Nellcor Puritan Bennett LLC*, CV-10-1275, 2011 WL 5335559, at *2 (D. Ariz. Nov. 7, 2011). Arizona has adopted the Uniform Trade Secrets Act, and defines a trade secret as:

> Information, including a formula, pattern, compilation, program, device, method, technique or process, that both: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Enter. Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, 148-49 (Ariz. Ct. App. 1999). "[N]ot only must the subject-matter of the trade secret be secret, it must be of such a nature that it would not occur to persons in the trade or business." *Id.* at 149.

## II.   Plaintiff's Requests to Seal

First, the plaintiff moves to seal pages 58-59, 84-85, 96-97, and 204-05 of Sam Celaya's deposition transcript. These pages constitute the entire exhibit. The plaintiff asserts that Mr. Celaya discusses eMove's trade secrets, including "how the computer program that eMove markets, WebSelfStorage, was developed" and "how certain aspects of the WebSelfStorage

3

program work with internet search engines to maximize engine visibility for eMove's customers." (Am. Joint. Stipulation File Excerpts Confidential Material Under Seal Re: eMove's Resp. Mot. Summ. J. and eMove Inc.'s Resp. Statement Facts Supplemental Statement Facts ("Joint Stipulation") [Docket 116], at 3.) The plaintiff further claims that Mr. Celaya discusses eMove's internal accounting and agreements with service providers.

In contending that the transcript contains trade secrets, eMove does not explain how anything that Mr. Celaya said reveals a formula or pattern that its competitors do not already know or use. Nor does eMove explain how any information in the deposition transcript provides eMove with an advantage over its competitors. After an *in camera* inspection of Mr. Celaya's deposition transcript, the court finds that nothing in it constitutes a trade secret or information that would so damage eMove that it rebuts the strong presumption in favor of access.

Next, eMove requests that the court seal four paragraphs of Mr. Celaya's declaration. These paragraphs state the monthly fee paid by its Premier Affiliates, in addition to the total number of Affiliates and Premier Affiliates. They also state the number of U-Haul-owned facilities listed on its online marketplace. The plaintiff contends that "This information is sensitive commercial information that eMove's competitors could use to market to eMove's customers and compete against eMove." (Joint Stipulation, at 4.) The price paid by Premier Affiliates in paragraph 22 is not a trade secret simply because it is not secret—it is revealed to eMove's many Premier Affiliates. The number of total affiliates is also not secret because each affiliate is listed on eMove's website. Additionally, the number of U-Haul-owned facilities can be determined from its website. Although information regarding the relationship between eMove and U-Haul-owned facilities may not be readily available, the plaintiff does not explain

4

how this information gives it an advantage over competitors. Even if it could be used to eMove's detriment, this is insufficient to rebut the strong presumption in favor of access.

eMove also asks the court to seal the Expert Report of MCA Financial Group, Ltd. in its entirety. eMove argues that it "is the very definition of confidential commercial and proprietary information." (*Id.*) The report contains eMove's customer growth rate from the years 2004 to 2011 and the average annual cash flow per customer, among other statistics. The court recognizes that profit and loss information is sensitive and may constitute trade secrets. *B2B CFO Partners, LLC v. Kaufman*, CV-09-2158, 2011 WL 6297930, at *2 (D. Ariz. Dec. 16, 2011). However, the plaintiff here does not adequately explain how this information provides it with a competitive advantage. *Id.* In addition, the expert report is central to the cause of action because it purports to calculate the damages incurred by eMove as a result of the defendants' allegedly unlawful acts. Therefore, the need for public access is at its peak. *Cf. Triquint Semiconductor, Inc. v. Avago Tech. Ltd.*, CV 09-1531, 2011 WL 4947343, at *2 (D. Ariz. Oct. 18, 2011) ("[W]here, as here, the documents are only tangentially related to the underlying cause of action, the public need is lessened."). Although this information has been filed under seal in connection with the *Daubert* motion, the plaintiff has not met the compelling reasons standard applied to documents filed in connection with a dispositive motion. The court recognizes, however, that the report contains the names of some of SMD's customers. These names are of little probative value, and they may be redacted from the publicly filed version.

In addition to the exhibits, eMove asks the court to seal portions of the Response and Response Statement of Facts. The portions of the Response that the plaintiff seeks to seal contain the same information that the plaintiff asks the court to seal in the exhibits. For the reasons discussed above, I find that there is no compelling reason to seal the following parts of

the Response: 5:25-26, 5:28-6:1, 6:15, 6:17-20, 13:27-28, 29:11-17, 29:21-28, and 30:1-8. Next, the plaintiff seeks to seal portions of its Response Statement of Facts that are already on public record in the defendants' statement of facts. [Docket 71.] After inspecting the remainder of the Response Statement of Facts that the plaintiff asks the court to seal, the court does not find compelling reason to seal the following: 2:15-3:3, 4:2-14, 4:23-5:8, 6:11-7:13, 7:22-27, 10:10-16, 11:3-13, 11:23-12:13, 16:9-30, 17:23-18:6, 18:21-19:10, 22:12-27, 24:5-10, 25:8-26:20, 27:23-26, 28:8-29:8, 30:1-23, 32:18-33:8, 33:19-34:13, 35:5-10, 35:21-35:16, 37:12-41:27, 45:4-13, 55:19-56:3.

### III.   Defendants' Requests to Seal

The defendants request the court to seal three exhibits in their entirety: the deposition transcript of Ross Lampe, the deposition transcript of Markus Hecker, and the defendants' call logs. After examining Mr. Lampe's deposition transcript, the court finds that it does not contain trade secrets or confidential business information that could damage the company such that it rebuts the strong presumption in favor of access. For example, the marketing methods described by Mr. Lampe on page 26 of his deposition are commonplace in the industry and not secret. Likewise, the organization of the company, described on pages 35-36, is not something that "would not occur to persons in the trade or business." *Enter. Leasing Co. of Phoenix*, 197 Ariz. at 149. Its "Sitelink Sales Do's and Don'ts" policy contains generally known business principles that are readily ascertainable to others in the industry. There is, however, a customer name on pages 103 of the transcript that the defendants may redact from the publicly filed version.

The same reasoning applies to Markus Hecker's deposition transcript. Nothing in it constitutes a trade secret, and the court finds that there is no compelling reason to seal it.

However, there are customer names on pages 137 and 139 that the parties may redact from the publicly filed version.

The defendants also move to seal their call logs. The call logs contain the names and contact information of customers and potential customers, which is information that the defendants claim is confidential. Because this information is tangentially related to the cause of action, the need for public access is lessened. *Triquint Semiconductor, Inc*, 2011 WL 4947343, at *2. Therefore, the parties may redact names and contact information from the publicly filed version. If there is information in addition to the names and contact information of customers and potential customers that the parties request the court to seal, then the parties must explain, item by item, the compelling reasons for sealing.

The defendants also ask that portions of the Response and Response Statement of Facts be sealed. For the reasons discussed above, the court finds that there is no compelling reason to file under seal the following parts of the Response: 2:27-28, 3:12-14, 4:2-3, 7:1-9, 7:19-8:4, 8:11-23, 8:26-12:12, 13:27-28, 16:23-27, 17:4-8, 21:18-22:1, 25:6-8, 25:22-23, 26:4-8, 26:18-20, 28:25-28, 29:21-30:8, 35:8-12. The court will permit, however, the parties to redact the customer name and phone number on page 11 of the Response. In addition, the court finds that there is no compelling reason to file under seal the following statements from the plaintiffs' supplemental statement of facts: 47:20-53:12, 55:12-14, 56:8-17.

### IV.   Conclusion

In conclusion, the court **DENIES** the parties' Amended Joint Stipulation to File Excerpts of Confidential Material Under Seal Re: EMove, Inc's Response to Motion for Summary Judgment and EMove Inc's Response to Statement of Facts and Supplemental Statement of Facts

7

[Docket 116].  With the one exception stated below, the parties may only redact customer and potential customer names and contact information from the Response, Response Statement of Facts, and accompanying exhibits.  However, the court will consider a motion by the defendants to seal additional information from its call logs if it provides compelling reasons for doing so, item by item.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 2, 2012

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE