IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

EMOVE INCORPORATED,

        Plaintiff,

v.                                                                                          NO. CV-10-02052-PHX-JRG

SMD SOFTWARE INCORPORATED, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Defendants' Motion for Award of Attorneys' Fees and Non-Taxable Expenses [Docket 191]. The defendants seek a total of $864,896.25 in attorneys' fees and $97,716.41 in non-taxable costs. (*See* Reply in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 209], at 13). For the reasons stated below, the motion is **GRANTED in part** and **DENIED in part**. The defendants are awarded $836,079.15 in attorneys' fees and $97,716.41 in non-taxable costs.

**I.**    **Background**

The factual background of this case has been discussed at length in the court's Memorandum Opinion and Order of April 20, 2012 [Docket 168] and need not be repeated here for purposes of the instant motion. The plaintiff eMove Inc. filed its complaint on August 31, 2010 in Maricopa County Superior Court, Arizona. On September 23, 2010, the defendants removed the case to this court. The complaint brought several claims: (1) business defamation/injurious falsehood; (2) tortious interference with business relationships; (3)

1

interference with valid business expectancy; (4) violation of the Lanham Act; and (5) common law unfair competition. On April 20, 2012, the court granted summary judgment in favor of the defendants and granted the plaintiff's motion for leave to file its First Supplemental Complaint ("Amended Complaint").

The plaintiff subsequently filed the Amended Complaint, alleging the same claims as the Original Complaint, but with additional allegations regarding a statement supposedly made by defendant Markus Hecker at the Inside Self-Storage World Expo in Las Vegas, Nevada. On May 17, 2012, the plaintiff filed a motion to dismiss the Amended Complaint with prejudice pursuant to FED. R. CIV. P. 41(a)(2) [Docket 187]. The court entered a Judgment Order [Docket 190] in favor of the defendants. Afterwards, the defendants filed the instant motion requesting attorneys' fees and non-taxable costs. A response and reply has been filed, and the motion is ripe for review.

## II.   The Defendants' Eligibility for Attorneys' Fees

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). It is undisputed that the defendants are "prevailing parties" in this case. The court granted summary judgment in favor of the defendants on all claims in the original complaint, the claims in the Amended Complaint were dismissed with prejudice, and a Judgment Order was entered in favor of the defendants.

Where a defendant prevails in a Lanham Act case, exceptionality is shown when the case is "*either* groundless, unreasonable, vexatious, *or* pursued in bad faith."[1] *Cairns v. Franklin Mint*

---

[1]   Contrary to the plaintiff's argument, no showing of culpable conduct is required when the defendant prevails on a Lanham Act claim. Rather, the case law establishes that *a defendant's infringement* must be "willful, deliberate, knowing, or malicious" for a case to be exceptional. *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003) (emphasis added). The court is not faced with the issue of a defendant's infringement on a trademark under the Lanham Act. The "willful, deliberate, knowing, or malicious" standard is therefore inapplicable.

*Co.*, 292 F.3d 1139, 1156 (emphasis in original) (internal quotations omitted); *see also ANT v. McPartlin*, No. CV 09-7672 PSG (RZx), 2010 WL 4572690, at *4 (C.D. Cal. Nov. 2, 2010) (recognizing that "[t]he requirements are disjunctive, *i.e.*, the prevailing party need only establish one attribute of an exceptional case, not all four."). In *Cairns*, the district court found that two claims brought by the plaintiffs were "groundless and unreasonable," and the Ninth Circuit held that the district court did not abuse its discretion in awarding attorneys' fees to the defendant. *Cairns*, 292 F.3d at 1156.

"A claim is considered factually groundless where there is 'no reasonable basis to believe' in the factual allegations underlying the claim and is considered legally groundless where there is 'no legal basis' for the claim itself, which instead rests on 'absurd' or 'just short of frivolous contentions of law.'" *ANT*, 2010 WL 4572690, at *5. The simple fact that the court determines that the defendants were entitled to judgment does not mean that the plaintiff's claims were groundless. *Id.* at *6.

I **FIND** that the plaintiff's claims here were groundless and unreasonable, and that the defendants are eligible for attorneys' fees. I previously noted that "[a] plaintiff cannot sustain its Lanham Act claim by merely throwing mud at the wall and hoping that some of it will stick. *This is precisely what the plaintiff has done in this case.*" (Mem. Op. & Order [Docket 168], at 13 (emphasis added)). The plaintiff's theory of the case evolved throughout the litigation, and some of its claims were abandoned along the way. (*See id.*). For example:

> [T]he record demonstrates that at times the plaintiff has complained that the defendants told customers and potential customers that eMove's server crashed in 2003. In addition, eMove has alleged that the defendants improperly conflate U-Haul and eMove. However, neither of these statements is included in the plaintiff's chart in its response to the motion for summary judgment, which identifies the false statements in dispute. At the summary judgment hearing, plaintiff's counsel stated that the plaintiff is not alleging that statements about the server crash are actionable.

3

(*Id.* at 13 n.7). When the court finally pinned down the statements that the plaintiff claimed to be actionable under the Lanham Act, the court easily found that no genuine issues of material facts existed. Moreover, "[s]trikingly absent from the plaintiff's evidence of dissemination is testimony from customers asserting that the defendants made any of the allegedly false statements to them." (*Id.* at 17). The "Lorton Fax," heavily relied upon by the plaintiff, was sent to only one recipient, who dismissed it as "foolishness," forwarded the fax to the plaintiff, and switched to the plaintiff's product. (*Id.* at 4-5, 19).

The Amended Complaint is further indicative of the plaintiff's unreasonable attempts to make something stick in this case. The Amended Complaint was filed four days after the granted summary judgment to the defendants on every claim in the original complaint. However, similar to the claims that the court granted summary judgment in favor of the defendants, the additional allegations in the Amended Complaint fared no better.[2] The only difference this time is that the plaintiff voluntarily dismissed its own complaint. There was simply no reasonable basis to believe in many of the factual allegations underlying the plaintiff's claims.

## III.     The Reasonableness of the Requested Attorneys' Fees

The defendants request a total of $864,896.25 in attorneys' fees and $97,716.41 in non-taxable costs. Having found that the defendants are entitled to attorneys' fees, I now determine the reasonableness of the requested fees. The starting point for determining the amount of attorneys' fees is the lodestar method, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433

---

[2] The original allegations involved misrepresentations Hecker made at a Colorado trade show. The new allegations in the Amended Complaint involved statements Hecker made at a Nevada trade show. The court had already held that the original misrepresentations were insufficiently disseminated, and there was absolutely no evidence supporting the assertion that the newly alleged statements were sufficiently disseminated.

(1983); *see also Cairns*, 292 F.3d at 1157. Once the lodestar figure has been calculated, the court has discretion to adjust the figure based on certain factors.[3]

I **FIND** that the attorneys' fees are reasonable based on the lodestar method. The primary attorneys on the case, Maureen Beyers ("Beyers"), Erick Ottoson ("Ottoson"), and Eric Fraser ("Fraser"), billed at rates of $370-380.00, $325.00, and $210.00 per hour, respectively, and the primary paralegal on the case, Bonomolo, billed at a rate of $160.00 per hour.[4] (Mem. in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses, Ex. D [Docket 201-3], at 82). The defendants have provided an affidavit from counsel on the case, market rate determinations in other cases in Phoenix, Arizona, and fee determinations in other cases where Osborn Maledon served as counsel. The defendants have also provided the fee agreement between Osborn Maledon and the defendants establishing the fees. (*Id.*, Ex. B [Docket 201-2]). The court notes that Osborn Maledon's rates are roughly equal to or lower than the market rate in this jurisdiction, and that several recent cases have upheld roughly similar hourly rates for attorneys practicing intellectual property law in the Phoenix, Arizona area. *See, e.g.*, *Skydive Ariz., Inc. v. Quattrocchi*, CV 05-2656-PHX-MHM, 2011 WL 1004945, at *3 (D. Ariz. Mar. 22, 2011); *Broadcast Music, Inc. v. TLM Invs., P.L.C.*, CV-09-8131-PCT-JAT, 2010 WL 2891524,

---

[3]   These factors are:
   (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the necessary skill required; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys on the case; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). The only factor really disputed by the plaintiff is (9), the experience, reputation, and ability of the attorneys, and only insofar as the plaintiff argues that the defendants did not provide sufficient information for the court to determine the reasonableness of the rate charged by the attorneys and other timekeepers. *See infra*, Part IV.B.

[4]   In general, the other attorneys and paralegals billed at approximately the same rates. Attorneys William J. Maledon, Brett L. Dunkelman, and David B. Rosenbaum billed at over $500.00 per hour. Given the background and qualification of these attorneys, I find these rates reasonable, particularly as they billed a total of only 0.70 hours in this case.

at *7 (D. Ariz. July 21, 2010); *LimoStars, Inc. v. N.J. Car and Limo, Inc.*, CV-10-2179-PHX-LOA, 2011 WL 3471092, at *18 (D. Ariz. Aug. 8, 2011).

The plaintiff did not object to the reasonableness of Osborn Maledon's hourly rates, and in light of the various cases reviewed by the court, I **FIND** that the hourly rates are reasonable. I also **FIND** that the $275.00 rate billed by Luther Starling, Jr. is reasonable based on a review of North Carolina cases. *See, e.g.*, *Irwin Indus. Tool Co. v. Worthington Cylinders Wis., LLC*, 747 F. Supp. 2d 568, 595 (W.D.N.C. 2010).[5] Moreover, I **FIND** that, with exception of the reductions discussed below, the number of hours reasonably expended on the litigation is reasonable. The evolving theories brought by the plaintiff throughout the case, the amount of discovery performed by the parties, and the various filings by the plaintiff, which required responses by the defendants, lead to the conclusion that the time spent on the defense of these claims was reasonable.

## IV.    The Plaintiff's Specific Objections to Attorneys' Fees

The plaintiff asserts the following reasons why the defendants' fees are unreasonable: (1) the defendants failed to submit original billing records and invoices; (2) the defendants failed to provide sufficient information regarding the qualifications, skills, and experience of most of their timekeepers; (3) the defendants' fees are more than three times that of the plaintiff; (4) Starling's fees are duplicative; (5) the defendants' attorneys block-billed from September 2010 to August 2012; (6) paralegal time was billed for administrative tasks; and (7) the court struck certain filings by the defendants as improper. The plaintiff also asserts that the defendants should not be awarded non-taxable costs. I address these arguments in turn below.

---

[5]    While *Irwin* involved the Charlotte, North Carolina market rather than the Smithfield, North Carolina market in which Daughtry, Woodard, Lawrence & Starling practices, the *Irwin* court found hourly rates between $325.00 and $400.00 for partners, well in excess of Starling's hourly rate of $275.00.

### A.     The Defendants Submitted Appropriate Billing Records

The plaintiff first argues that "Defendants' fee application should be denied in its entirety because Defendants have not provided any underlying support for their billing summary." (Pl.'s Resp. to Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 207], at 17). The defendants respond that they "submitted voluminous and extremely detailed documentation of their fees in compliance with LRCiv 54.2(d)(3)." (Reply in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 209], at 10). I **FIND** that the defendants have submitted adequate billing records. The entries do not appear to be "mere summaries of hours worked." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993). The defendants provided eighty-two pages of billing documentation. Most entries included the date, the name of the timekeeper, a detailed description of the particular tasks performed with the number of hours attributed to each task, the total of hours worked by that timekeeper for that day, and the amount billed.[6] (Mem. in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses, Ex. B [Docket 201-3]). The documentation provided by the defendants do not make it "very difficult to ascertain whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours." *Intel Corp.*, 6 F.3d at 623. The plaintiff "was entitled to see just what was charged and why," and the defendant's documentation provides the plaintiff with exactly that opportunity. *Id.*

### B.     The Defendants have Provided Sufficient Information Regarding the Qualifications, Skills, and Experience of Most, but not all, of its Timekeepers

The plaintiff argues that "Defendants have also failed to provide sufficient information regarding the qualifications, experience and skills of their billing staff to make a determination regarding the reasonableness of their rates." (Pl.'s Resp. to Defs.' Mot. for Award of Attorneys'

---

[6]     The ones that do not simply lack the number of hours attributed to each task; this "block billing" is addressed in Part IV.F.

Fees & Non-Taxable Expenses [Docket 207], at 17-18). It argues that "Defendants seek to recover fees generated by *ten* Osborn Maladon [sic] attorneys, a senior attorney at Daugherty, Woodward, Lawrence & Starling, and six paralegals," but only provided qualifications and expertise for three attorneys. (*Id.* at 18 (emphasis in original)). The plaintiff also contends that "[Defendants] also provide no explanation regarding why they are entitled to recover their paralegal fees." (*Id.* at 18).

The United States Supreme Court has clearly held that paralegal time is recoverable as attorneys' fees. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). Moreover, while the plaintiff takes issue with the number of timekeepers, the majority of them billed minimally or performed only discrete tasks. Of the 2,691 hours billed by the Osborn Maledon timekeepers, 2,227.40 were billed by Beyers, Fraser, and Ottoson, and another 361.70 was billed by one paralegal, Bonomolo. (*See* Mem. in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses, Ex. B [Docket 201-3]). This means, 2,589.1 of the 2,691 hours billed, or 96.2% of the time billed by Osborn Maledon, was by three attorneys and one paralegal.

The defendants have provided information as to the qualifications, experience and skills of certain timekeepers. The original motion contained such information as to attorneys Beyers, Ottoson, and Fraser. (Aff. of Maureen Beyers in Supp. of Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 201-1], at 4-5). The defendants' reply contains such information as to attorneys Jeffrey B. Molinar, Dawn Dauphine, Robert Brooks, Bill Maledon, Brett Dunkelman, and paralegals Bethany Bonomolo and Tom Spangler. (Supplemental Aff. of Maureen Beyers in Supp. of Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 209-1], at 5-7). David B. Rosenbaum's biography is publicly available on Osborn Maledon's website. However, the defendants provide no information as to John Forster, Victoria

M. Wittmaack, Mandy Owen, or Norell Starr, and these individuals are not on Osborn Maledon's website.[7] As a result, I **FIND** that the court cannot assess the reasonableness of the rates charged by these individuals, and the attorneys' fees charged by these individuals are reduced by $3,007.50.

      **C.**      **The Plaintiff's Fees are not a Proper Benchmark in this Case to Determine the Reasonableness of the Defendants' Fees**

The plaintiff contends that the defendants' request for attorneys' fees is unreasonable because the amount requested is over three times the amount incurred by the plaintiff. The defendants respond by arguing that their attorneys spent more time because they did better work, and that any discrepancy supports the notion that the plaintiff filed the case as a strike suit. Both sides cite *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281 (9th Cir. 2004). In *Reed*, the Ninth Circuit stated:

> While comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party . . . does not necessarily indicate whether the hours expended by the party seeking fees were excessive because numerous factors can cause the prevailing party to have spent more time than the losing party, such a comparison is a useful guide in evaluating the appropriateness of time claimed. If the time claimed by the prevailing party is of a substantially greater magnitude than what the other side spent, that often indicates that too much time is claimed.

*Reed*, 388 F.3d at 1287. *Reed* itself cited to *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001), which states that "in less complex cases there may be a tendency to assume—as the district court may have assumed here—that the time spent by an opposing counsel experienced in the subject matter is a good measure of the time reasonably expended." *Ferland*, 244 F.3d at 1151. *Ferland* goes on to say that "opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with

---

[7]     The court notes that the plaintiff specifically identified Norell Starr as one of the individuals for whom the defendants provided no information about, and the defendants failed to address this particular individual in their reply.

respect to their access to necessary facts, the need to do original legal research to make out their case, and so on." *Id.* There is also the "possibility that the prevailing party's attorney—who, after all, did prevail—spent more time because she did better work." *Id.*

I **FIND** that the attorneys' fees are reasonable even though the amount requested is more than three times the amount incurred by the plaintiff. The plaintiff notes that their attorneys and paralegals have worked a total of 630 hours on the matter since December 8, 2011, while the defendants have worked 1,357.60 hours on the matter in the same time. Given the history of this case, I cannot find that such a discrepancy in hours is unreasonable. It appears that the parties in this case were not "similarly situated." *Ferland*, 244 F.3d at 1151. The same issues that caused this case to be "exceptional" for purposes of awarding attorneys' fees in the first place under the Lanham Act leads to the conclusion that the plaintiff's attorneys' fees are not a proper benchmark in this case to determine the reasonableness of the defendants' attorneys' fees.

### D. Luther Starling, Jr.'s Fees are Reasonable and not Duplicative or Excessive

The plaintiff argues that the entirety of attorneys' fees incurred by Luther Starling, Jr. in the amount of $58,368.75 is duplicative and excessive. The defendants note that Starling is lead counsel for the ongoing litigation between the same parties in North Carolina. The court has reviewed the work performed by Starling and **FINDS** that it is not excessive or duplicative to that of the Osborn Maledon attorneys. The court has also reviewed the assertion that Mr. Starling routinely block billed his time on this matter and finds the block billing is minimal, and **FINDS** that the entries that were in fact block billed by Mr. Starling are nonetheless reasonable.

### E. A Twenty Percent Reduction for Block-Billed Time is Appropriate

The plaintiff argues that the defendants block billed their time on this matter, and the court should thus reduce the attorneys' fees award as a result. The defendants admit to block

billing "in the early stages of the case," but argue that "[a] reduction for block billing is appropriate only when the time entries do not allow the court to appraise the reasonableness of the fees sought." (Reply in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 209], at 9). Again, both parties cite to the same Ninth Circuit case in support of their argument: *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007). In *Welch*, the district court had "imposed an across-the-board reduction of 20 percent on [the prevailing party]'s total hours because [the law firm] chose to block bill some of its time rather than itemize each task individually." *Id.* at 948. The Ninth Circuit did not "quarrel with the district court's authority to reduce hours that are billed in block format," but found that the district court erred "in applying a 20 percent reduction to *all* of [the prevailing party]'s requested hours" because "barely more than half of all hours submitted by [the prevailing party]'s counsel were block billed." *Id.* (emphasis in original).

I **FIND** that a twenty percent reduction in the hours that were block-billed by Osborn Maledon is appropriate. Block billing "makes it more difficult to determine how much time was spent on particular activities." *Id.* The court has reviewed the billing entries that the plaintiff disputed and finds that a twenty percent reduction in most of the disputed entries is appropriate. Several entries, specifically Bonomolo's entries on July 6, 2011 and July 18, 2011, and Beyer's entry on July 8, 2011 are sufficiently adequate for the court to determine reasonableness despite the block billing. However, the court reduces the remainder of the disputed entries, totaling $71,168.00, by twenty percent, for a reduction in the amount of $14,233.60.

   **F. All of the Time Billed by Osborn Maledon's Paralegals are Appropriate**

The plaintiff argues for a reduction in the fees requested by the defendants for paralegal time, asserting that "[t]he vast majority of Defendants' paralegal time was allocated to secretarial

and clerical tasks." (Pl.'s Resp. to Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 207], at 21). The plaintiff correctly states that purely clerical or secretarial tasks include "filing and scheduling, calendaring activities, and bates labeling documents," and should not be included in an attorneys' fees award. (*Id.* at 21); *see Pearson v. Nat'l Credit Sys., Inc.*, No. CV-10-526-PHX, 2010 WL 5146805, at *3 (D. Ariz. Dec. 13, 2010). However, although the plaintiff lists twelve different administrative tasks that it alleges that the defendants billed paralegal rates at, the vast majority of the disputed time entries simply involved paralegals cite-checking and revising motions. Nowhere does the plaintiff point to *any* time entry whereby paralegals billed for filing and scheduling, calendaring, or bates labeling documents. Moreover, the plaintiff offers zero support for its assertion that proofreading, cite-checking and revising motions are clerical or secretarial tasks. This lack of support could be because activities such as cite-checking by paralegals are simply *not* clerical or secretarial tasks. *See Operating Eng'rs' Pension Trust Fund v. Clark's Welding & Mach.*, 2010 WL 1729475, at *5-6 (N.D. Cal. Apr. 27, 2010); *Institute for Wildlife Protection v. Norton*, 2006 WL 1896730, at *2 (W.D. Wash. July 10, 2006) (cite-checking and Shepardizing is proper paralegal activity); *Housing Rights Center v. Sterling*, 2005 WL 3320738, at *4 (C.D. Cal. Nov. 1, 2005) (cite-checking proper for paralegal fees).

The defendants have written off $32.00 for paralegal time spent on arranging for enlargement of exhibits. (Reply in Supp. of Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses, Ex. N [Docket 209-4], at 24). I **FIND** that the time billed by the paralegals at Osborn Maledon are appropriate, and no other billing entries in the record that suggest clerical or secretarial tasks were billed at paralegal rates.

### G.   The Time Billed by Osborn Maledon for and Related to its Reply Statement of Facts is not Appropriate

The plaintiff argues that the defendants should not be awarded any attorneys' fees for their preparation and defense of the defendants' Reply Statement of Facts in Support of their Motion for Summary Judgment and Response to Plaintiff's Supplemental Statement of Facts. I agree and **FIND** that the defendants should not be awarded attorneys' fees for work related to the Reply Statement of Facts. The filing was improper and it was stricken from the record. [*See* Docket 158.] The court's review of the billing record indicates that a total of $11,576.00 was billed on work related to the Reply Statement of Facts, and therefore the attorneys' fees award is reduced by that amount.

### V.   The Plaintiff's Objections to Non-Taxable Costs

With respect to non-taxable costs, the plaintiff first claims that "[n]owhere does the Lanham Act authorize awards of all taxable costs." (Pl.'s Resp. to Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 207], at 22). While the plaintiff cites no authority for this argument, I recognize that several cases in this district have previously held that "non-taxable costs are not recoverable under the Lanham Act." *Roth v. Naturally Vitamin Supplements, Inc.*, CV-04-2135-PHX-FJM, 2007 WL 2020114, at *7 (D. Ariz. July 6, 2007); *see also BBQ Hut, Inc. v. Maelin Enters., LLC*, CV-06-2050-PHX-FJM, 2008 WL 2687685, at *4 (D. Ariz. July 3, 2008); *LimoStars, Inc. v. N.J. Car and Limo, Inc.*, CV-10-2179-PHX-LOA, 2011 WL 3471092, at *19 (D. Ariz. Aug. 8, 2011).

However, the Ninth Circuit disagrees, recently holding that "attorney's fees under the Lanham Act may also include reasonable costs that the party cannot recover as the 'prevailing party.'" *Secalt S.A. v. Wuxi Shenxi Constr. Machinery Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012); *see also Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010); *Trs. of*

*the Constr. Indus. & Laborers Health and Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006); *Davis v. City of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). In *Secalt*, the Ninth Circuit did not take issue with the district court's award of non-taxable costs *per se*, but remanded because the district court had not considered the reasonableness of the costs requested. *Secalt S.A.*, 668 F.3d at 690. Accordingly, I **FIND** that the court may appropriately award non-taxable costs to the defendants.

With respect to the $97,716.41 requested by the defendants, the plaintiff specifically takes issue with the defendants' request for $62,156.99 for electronic research fees, $9,871.20 for photocopies, and $9,605.01 for document imaging. The plaintiff's essential contention on these items is that the defendants have provided insufficient explanations for these costs. The plaintiff states that, "[i]n order to assert a right to $62,156.99 in research fees, Defendants need to provide some explanation so that the Court can determine whether these fees are reasonable or whether they were ever charged to the client." (Pl.'s Resp. to Defs.' Mot. for Award of Attorneys' Fees & Non-Taxable Expenses [Docket 207], at 24). In *Secalt*, no details or itemization were provided and therefore the reasonableness of costs could not be determined. *See Secalt S.A.*, 668 F.3d at 690. Here, the defendants have provided sufficient details and itemization in their reply, providing invoices from Westlaw and LexisNexis and explaining discounts that Osborn Maledon gave to the defendants. (*See* Supplemental Aff. of Maureen Beyers in Supp. of Mot. for Award of Attorneys' Fees & Non-Taxable Expenses ¶¶ 7-8 & Ex. I [Docket 209-1 & 209-2]). The court has reviewed the invoices and **FINDS** the electronic research fees in the amount of $62,156.99 to be reasonable. With respect to photocopies and document imaging, the defendants have supplemented their affidavit and included actual invoices for document imaging services. (*See id.* ¶ 6 & Ex. J [Dockets 209-1 & 209-3]; Aff. of Maureen Beyers in Supp. of Mot. for Award of

Attorneys' Fees & Non-Taxable Expenses, Ex. B [Docket 201-2], at 9). The court has reviewed this additional information and **FINDS** that the amounts of $9,871.20 for photocopies and $9,605.01 for document imaging are reasonable.

## VI.     Conclusion

In sum, the attorneys' fees in this case must be reduced by a total of $28,817.10. The Motion for Attorneys' Fees is **GRANTED in part** and **DENIED in part**. The defendants are awarded $836,079.15 in attorneys' fees and $97,716.41 in non-taxable costs.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     October 11, 2012

Joseph R. Goodwin, Chief Judge